NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Janet Digerolamo,

       Plaintiff,

    v.

Jo Anne B. Barnhart,
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

CIVIL NO. 06-0327(NLH)

**OPINION**

**APPEARANCES:**

Richard L. Group, Esquire
Bross & Group, PA
102 Browning Lane, Building C-1
Cherry Hill, NJ 08003

    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Kimberly L. Shiro, Esquire
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

    Attorney for Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of

Plaintiff for Social Security Disability Insurance Benefits ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled from January 15, 1996 through September 30, 1998.  For the reasons stated below, this Court will affirm that decision.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, Janet Digerolamo, has a high school education and had worked periodically as a home health technician and hemodialysis technician before the alleged onset of her disability on January 15, 1996.  Plaintiff was diagnosed with breast cancer in her right breast and underwent a radical mastectomy and reconstruction on February 9, 1996.  Thereafter, Plaintiff received chemotherapy for eight months, ending in October 1996.  Plaintiff returned to work on a part time basis from October 1997 to early 1999, a period of approximately a year and a half.  In April of 1999, Plaintiff was diagnosed with breast cancer in her left breast and underwent a left mastectomy and reconstruction on April 27, 1999.[1]

_____

[1]There is some dispute as to the actual date that Plaintiff was last insured for disability benefits.  Defendant argues for the first time in its brief that Plaintiff's date last insured ("DLI"), based on a review of her earnings records, was March 31, 1997.  This argument, however, was not raised at the

Plaintiff applied for Social Security benefits on August 1, 1996, alleging that she was disabled as of January 15, 1996 due to testing and treatment for her cancer and a number of impairments such as respiratory problems, headaches, chest pain, and fatigue.  Plaintiff's application was denied on November 6, 1996, and a reconsideration was denied on February 8, 1997.  Plaintiff did not appeal the denial.  Plaintiff filed a new application on March 27, 1999, again alleging an onset date of disability of January 15, 1996.  That application was denied July 18, 1999.  On June 26, 2003, after a hearing before an ALJ, it was determined that Plaintiff was not disabled and the Plaintiff's claim for benefits was denied.  On April 20, 2005, the Appeal Council made additional evidence submitted part of the official record, but denied the request for review.  Plaintiff now seeks this Court's review.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must

---

administrative hearing, and, therefore is not considered by this Court.  The Court will abide by the ALJ's determination that Plaintiff's DLI was September 30, 1998.

uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has

held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper

5

legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  <u>See</u> <u>Id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the

7

Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

Despite the fact that Plaintiff had returned to work on a part time basis in October of 1997, the ALJ did not find the part-time work to be evidence of substantial gainful employment. Consequently, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset date of disability of January 15, 1996 (Step One).  The ALJ found that the Plaintiff had residuals of treatment for cancer, including radical mastectomy, reconstructive surgery, and chemotherapy, which he found to be severe (Step Two).  However, the ALJ found that the Plaintiff's severe impairments did not meet or equal a listed impairment (Step Three).  Finally, the ALJ determined that despite Plaintiff's severe and other non-severe impairments, Plaintiff retained the ability to perform her past relevant work (Step Four).

Plaintiff presents two main arguments for review of the ALJ's determination: (1) whether there was substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled and was capable of engaging in her past relevant work, and (2) whether the ALJ improperly failed to consider a closed period of

8

disability.

**1.  Whether there was substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled and was capable of engaging in her past relevant work**

Plaintiff makes four arguments to support her contention that the Commissioner's findings were not supported by substantial evidence.  First, Plaintiff argues the ALJ did not properly consider the effects of Plaintiff's cancer treatment.  Second, Plaintiff argues the ALJ did not properly consider her complaints related to her non-severe impairments, such as fatigue, extremity and chest pain, and headaches, especially when making his credibility analysis.  Third, Plaintiff argues the ALJ did not consider evidence of Plaintiff's asthma, including records of asthma treatment added to the record by the Appeals Council after the hearing.  Fourth, Plaintiff argues the ALJ improperly relied on the state medical consultant's residual functional capacity ("RFC") assessment when the ALJ determined Plaintiff's capacity to engage in substantial gainful employment.  We address each of Plaintiff's arguments separately below.

**a.  Whether the ALJ properly considered the effects of Plaintiff's cancer treatment when formulating Plaintiff's RFC**

Plaintiff argues that she was unable to work beginning on January 15, 1996, because of her surgeries, chemotherapy, hospitalizations, and recovery periods.  Plaintiff notes her

radical mastectomy and reconstruction, chemotherapy treatments, a brief hospitalization for respiratory insufficiency, and post chemotherapy treatment.  Plaintiff argues the ALJ ignored these treatments and symptoms and therefore rendered a decision that was not based on substantial evidence.

In support of her position, Plaintiff argues that the ALJ did not follow Social Security Regulation 96-8p("SSR 96-8p"), which requires that an assessment of a claimant's RFC include a consideration of the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment(e.g., frequency of treatment, duration, disruption to routine, side effects of medication).  See SSR 96-8p.  Plaintiff also argues that because of her frequent need for medical attention and hospitalization, her situation is similar to the plaintiff in Kangas v. Bowen, 823 F.2d 775,(3d Cir. 1987).  In Kangas, the Third Circuit held that where the plaintiff was hospitalized several times, each hospitalization requiring a subsequent one to two week recovery period, the ALJ erred in finding the plaintiff could perform work in the national economy.  Id. at 778.  The Third Circuit referenced 20 C.F.R. Regulations No. 4, Subpt. P,§404.1545(b), which is the regulation which requires a determination of a "claimant's capacity for work on a 'regular and continuing basis'. . . "  Id. at 777(emphasis original).

Although Plaintiff argues that SSR 96-8p and Kangas required

10

the ALJ to find Plaintiff disabled due to her medical treatments, her situation is distinguishable from <u>Kangas</u>.  While Plaintiff had to make frequent hospital visits every three weeks for eight months for her chemotherapy there is no documentation of any extensive recovery period after those visits, as opposed to the one to two week recovery periods noted in <u>Kangas</u>.  Indeed, Plaintiff's treating oncologist, Dr. Mitchell, reported on April 9, 1996 that Plaintiff had tolerated her first chemotherapy treatment well and that she had not experienced any nausea, vomiting, or other side-effects of chemotherapy.  On August 1, 1996, Dr. Mitchell reported that Plaintiff had tolerated her chemotherapy "extremely well" and had complaints of only mild queasiness and mild upper-quadrant pain.

Plaintiff also stressed the significant impact of a March 15, 1996 hospitalization for chest pain and four day hospitalization in August of 1996 due to respiratory insufficiency.  Dr. Mitchell commented on the March 15th hospitalization on April 4, 1996, noting that there was no evidence of cardiac disease and that an anti-inflammatory agent had resolved her sternal pain.  On August 22, 1996, Dr. Mitchell discussed Plaintiff's four day hospitalization for respiratory problems, indicating that Plaintiff's respiratory infection had completely cleared.  Based on the medical records before the ALJ, Plaintiff did not have extended recovery periods following her

11

chemotherapy treatments and had no documented limitations from her four day hospitalization.

Plaintiff also argues that the ALJ failed to properly address Plaintiff's severe and non-severe impairments when formulating Plaintiff's RFC.  As an initial matter, the formulation of a Plaintiff's RFC occurs at Steps Four and Five, not at Step Two, where the ALJ is classifying the severity of the claimant's condition(s).  See SSR 96-8p.  The relevant regulation states:

> If you have a medically determinable severe physical or mental impairment(s), but your impairment(s) does not meet or equal an impairment listed in Appendix 1 of this subpart, we will consider the impact of your impairment(s) and any related symptoms, including pain, on your residual functional capacity. (See §404.1545.)

20 C.F.R. §404.1529.  In addition, the Third Circuit in Fargnoli v. Massanari, 247 F.3d 34 (3d Cir. 2001), stated:

> The ALJ must consider all relevant evidence when determining an individual's [RFC] in step four (citations omitted).  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by claimant and others and observations of the claimant's limitations by others. See 20 C.F.R. 404.1545(a). Moreover, the ALJ's finding of [RFC] must "be accompanied by a clear and satisfactory explanation of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

Id. at 41.

Here, the ALJ found Plaintiff's residuals from her radical mastectomy, her reconstructive surgery, and her chemotherapy to be severe impairments during his Step Two analysis.  However, at

12

Step Four, the ALJ found that "medications imposed [no]
mental/cognitive limitations"[2] and that "no treating physician
assessed the claimant with an inability to work".  (R at 29.)
The ALJ also pointed out that the claimant had worked while
taking Tamoxifen and that Plaintiff had received chemotherapy
only between February and October of 1996, a small window of the
wider period of alleged disability.  (Id.)  Consequently,
although the ALJ determined that Plaintiff had severe impairments
at Step Two, he further determined that those severe impairments
did not impose functional limitations when computing Plaintiff's
RFC at Step Four.

> **b.  Whether the ALJ properly considered Plaintiff's
> complaints related to non-severe impairments, such
> as fatigue, extremity and chest pain, and headaches
> when making his credibility analysis**

Plaintiff also argues that the ALJ failed to adequately
consider medical records of her chronic headaches, fatigue, and
chest and bone pain and improperly discredited her testimony on
those symptoms.  The ALJ's assessment of Plaintiff's credibility

---

[2]It appears the record contains a typographical error.
Although the ALJ's statement does not contain the word "no", a
review of the context of the sentence and the entire decision
leads the court to read the ALJ's statement as "The
Administrative Law Judge awards substantial weight to the opinion
of the State Agency medical consultant as noted in Exhibit 5F.
We note that medications imposed [no] significant
mental/cognitive limitations, chemotherapy was only given
February 1996 to October 1996 (Exhibit 3F, p 110) and, the
claimant actually worked while taking Tamoxifen.  Additionally,
no treating physician assessed the claimant with an inability to
work."  (R. at 29.)

reads as follows:

> The functional limitations alleged did not seem
> credible because the claimant's testimony seemed overly
> vague, needed much prompting and leading by Counsel,
> testimony was exaggerated considering the objective
> medical findings and was inconsistent with the much
> higher level of daily activities indicated.  The
> Administrative Law Judge questions generally the
> claimant's recollection of symptoms occurring as much
> as 8 years in the past.  We believe the claimant had
> some subjective symptoms, but not of the intensity,
> frequency or duration alleged during the relevant
> period. (SSR 96-7p).

(R. at 29.)  Plaintiff argues that this credibility analysis is

conclusory, ignores pertinent subjective evidence in the record,

and lacks the specificity that is required.

SSR 96-7p requires that before an ALJ makes a determination

of credibility, the ALJ must first determine whether the claimant

has an underlying impairment that could reasonably produce the

symptoms. SSR 96-7p.  If the ALJ finds such an impairment, the

ALJ next evaluates the intensity of the claimant's symptoms and

the limitations they impose on the claimant's ability to work.

Id.  If the ALJ determines that the claimant's statements about

the intensity, persistence, or functionally limiting effects are

not substantiated by objective medical evidence, he must make a

finding on the credibility of the individual's statements based

on the entire record. Id.

Plaintiff points to several cases that interpret SSR 96-7p

to support her contention that the ALJ's credibility assessment

was incorrect.  In Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.

14

1991), the Ninth Circuit determined that an ALJ may not reject a plaintiff's subjective complaints of pain based solely on a lack of medical evidence to corroborate those complaints.  This is because symptoms might suggest greater severity than objective medical evidence can show on its own. SSR 96-7p.  In <u>Morales v. Apfel</u>, 225 F.3d 310 (3d Cir. 2000), the Third Circuit stated that while "an ALJ may consider his own observations of the claimant and this Court cannot second-guess the ALJ's credibility judgments, they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record."  The court particularly rejected the ALJ's dismissal of a treating physician's medical opinion that the plaintiff was unable to work based on his own analysis of the medical record and his prior determination that the plaintiff lacked credibility.  In <u>Schaudeck v. Commissioner</u>, 181 F.3d 429 (3d Cir. 1999), the Third Circuit faulted the ALJ's decision to discredit the plaintiff's testimony of disabling pain and limitations precluding work on two grounds.  The Court pointed out that the ALJ had failed to credit the plaintiff's complaints of pain in light of the medical documentation of his chemotherapy treatment the potential side effects of medications which tended to corroborate his complaints.  <u>Id.</u> at 433.

We find these cases distinguishable from Plaintiff's case. Unlike the cases cited by Plaintiff, here, the ALJ noted that the

15

objective medical evidence available, including Dr. Mitchell's treatment records, tended to contradict Plaintiff's testimony regarding the severity of her symptoms.  For example, Plaintiff claimed during her testimony that she suffered from fatigue, headaches, and chest and extremity soreness throughout the period of her chemotherapy from February to October, 1996.  Dr. Mitchell's first documentation of fatigue was on Oct. 17, 1996, and fatigue was not mentioned again until on May 14, 1998, when Dr. Mitchell reported, "There is some fatigue, but there is no polyuria[3] or polydypsia[4]."  (R. at 255.)  No treatment for fatigue was ever documented.[5]  Also, although Plaintiff alleged that she experienced disabling headaches during the period of her chemotherapy and thereafter, the first documented complaints of headaches were noted by Dr. Mitchell on August, 14, 1997, with the notation that the headaches were "starting recently."  (R. at

---

[3]Polyuria is "Excessive excretion of urine resulting in profuse and frequent micturition."  Micturition is "urination" or "the desire to urinate."  STEDMAN'S MEDICAL DICTIONARY 1426, 1117 (27th ed. 2000).

[4]Polydypsia or polydipsia is "Excessive thirst that is relatively prolonged."  STEDMAN'S MEDICAL DICTIONARY 1420 (27th ed. 2000).

[5]It is true that Dr. Mitchell's October, 1996 report of Plaintiff's fatigue states "this is not a new symptom for her." (R. at 426.)  Although it could be inferred that her fatigue was present throughout the period of her chemotherapy, it is also reasonable to infer that the ALJ determined that the lack of prior documentation of complaints meant that Dr. Mitchell did not consider this symptom to be serious or disabling.

269.)  Moreover, a CT scan of Plaintiff's head revealed no
lesions and by August 13, 1998 Plaintiff was reporting no
headaches.  No treatment for the headaches was ever documented.

With regard to complaints of pain, Plaintiff was
hospitalized briefly for chest pain on March 15, 1996.  However,
Dr. Mitchell documents that the pain had been improved with an
anti-inflammatory.  On October 17, 1996, Dr. Mitchell notes
complaints of bony leg pain which had lasted four months.
Although bone pain is a noted side effect of G-CSF, the symptom
had not been previously mentioned and no limitations were ever
suggested.  Indeed, Dr. Mitchell filed a report on October 25,
1996 which stated that apart from her cancer, Plaintiff had no
physical or mental impairments or limitations.

This review of Plaintiff's complaints of side effects shows
that the ALJ did not discard the medical opinion of the treating
physician nor did he simply ignore Plaintiff's claims of symptoms
that could reasonably be credited as side effects of her
chemotherapy and drug treatments.[6]  Rather, the ALJ used the
medical reports of Dr. Mitchell and Plaintiff's reported daily
activities as a basis to discredit Plaintiff's subjective
complaints.  The ALJ stated that he believed the Plaintiff had

_____

[6]There is some additional evidence that Plaintiff
experienced extremity and chest wall pain intermittently from
1998 through 2000.  (R. at 197-206,230,243,436,441.)  However,
all of this evidence documents symptoms that affected Plaintiff
after her September, 1998 DLI.

indeed suffered from some of the symptoms and side affects of her impairment and treatment.  However, the ALJ determined that those symptoms were exaggerated based on the medical reports of Dr. Mitchell, Plaintiff's reported daily activities and part time work, and medical evaluations imposing no limitations on Plaintiff that would preclude her from work.

Nevertheless, Plaintiff complains that the ALJ's credibility assessment failed to cite specific evidence that contradicted Plaintiff's testimony, failed to mention ADL questionaires submitted by Plaintiff and Tracey Holbrook[7], and erroneously questioned Plaintiff's ability to recall her condition eight years after the fact.  The ALJ stated that Plaintiff's testimony was vague and seemed to be prompted by her counsel, based on his personal observations.[8]  (R. at 29.)  The ALJ next stated that he found Plaintiff's testimony exaggerated given the objective medical findings and then proceeded to summarize that medical evidence in the next paragraph.  (Id.)  The ALJ specifically

---

[7]Tracey Holbrook was a friend of Plaintiff for twenty-three years who knew Plaintiff during her cancer treatments.

[8]The court notes that the ALJ did not specifically point to the testimony that he believed was overly vague and prompted, nor did he make specific record cites to medical evidence which contradicted Plaintiff's testimony.  This specificity is important to a thorough review of the ALJ's decision.  Schaudeck v. Commissioner, 181 F.3d 429 at 433.  However, the ALJ adequately summarized the relevant medical evidence that contradicted Plaintiff's testimony and described his observations regarding the character of Plaintiff's testimony which led to his credibility determination.

noted that he accorded significant weight to the state medical
consultant's RFC assessment, dated Oct. 25, 1996.  (Id.)  The ALJ
went on to note that Plaintiff's medications imposed no
significant mental/cognitive limitations and that no treating
physician had ever assessed the claimant with an inability to
work.  (Id.)  This summary adequately outlines the ALJ's basis in
the medical evidence for rejecting the Plaintiff's testimony
regarding the severity of her symptoms.

While the ALJ did not specifically mention or discredit the
ADL reports submitted by Plaintiff and Tracey Holbrook in August
of 1996, given the ALJ's specific reference to the weight he
accorded to the state medical consultant's RFC assessment and the
lack of any limitations imposed by Dr. Mitchell, it is reasonable
to infer that the ALJ accorded little significance to the
subjective ADL reports.  Consequently, Plaintiff's claims that
the ALJ's credibility assessment was conclusory and unsupported
by the record are without merit.

> **c.  Whether the ALJ failed to consider evidence of
> Plaintiff's asthma, including treatment records added
> to the record by the Appeals Council after the hearing**

Plaintiff argues that the ALJ failed to properly consider
evidence of Plaintiff's asthma, which led him to make an
erroneous decision that Plaintiff's asthma was not a severe
impairment at Step Two of the sequential analysis.  Plaintiff
notes that the Appeals Council added 48 pages of treatment notes

from the Plaintiff's asthma specialist, Dr. Gilmour, which
Plaintiff contends is "new and material" evidence of a severe
asthma impairment.  Plaintiff contends that the ALJ's failure to
consider the evidence added by the Appeals Council and the
evidence on record before the ALJ at the hearing represents a
failure of the Commission to support its decision with
substantial evidence.

Respecting the ALJ's consideration of Dr. Gilmour's
treatment notes, it is critical to note that the Appeals Council
denied review of the ALJ's decision when it admitted Dr.
Gilmour's treatment notes.  In Matthews v. Apfel, 239 F.3d 589
(3d Cir. 2001), the Third Circuit analyzed whether a claimant
must demonstrate good cause for failure to present to the ALJ new
and material evidence that was only presented for the first time
to the Appeals Council which, after consideration, denies the
review. Matthews v. Apfel, 239 F.3d at 591.  The court adopted
the view of the Seventh Circuit in Eads v. Sec'y of HHS, 983 F.2d
815 (7th Cir. 1993), explaining "although evidence considered by
the Appeals Council is part of the administrative record on
appeal, it cannot be considered by the District Court in making
its substantial evidence review once the Appeals Council has
denied review." Matthews at 593.  The court went on to explain
that when the Council accepts new evidence but still denies
review ". . . the decision reviewed in the courts is the decision

of the administrative law judge.  The correctness of that
decision depends on the evidence that was before him.  He cannot
be faulted for having failed to weigh evidence never presented to
him . . . " Id. at 593(citing Eads, 983 F.2d at 817 (citations
omitted)).  In Damato v. Sullivan, 945 F.2d 982 (7th Cir. 1991),
the Seventh Circuit further explained the situation as follows:

> When the Appeals Council denies review in accordance
> with its discretion under 20 C.F.R. § 416.1467, the
> rationale for requiring articulation of its reasoning
> is absent, since the denial is not subject to judicial
> review-if the Appeals Council denies a request for
> review, the ALJ's decision becomes the final decision
> of the Secretary, see 20 C.F.R. § 416.1481, and
> judicial review is available only for the final
> decisions of the Secretary.

Id. at 988 (citations omitted).  Here, Plaintiff has not
challenged the Appeals Council decision not to review the ALJ's
decision, but rather has asked the court to review the ALJ's
determination of the severity of Plaintiff's asthma.  This Court
can not consider Dr. Gilmour's treatment records in our
substantial evidence review of the ALJ's asthma determination
because that evidence was not before the ALJ when he made his
decision.

Plaintiff also requests that the Court remand the case to
the Commissioner for reconsideration of Dr. Gilmour's treatment
records.  In Matthews, the Third Circuit discussed the options
available under 42 U.S.C. 405(g) when it stated, ". . . when the
claimant seeks to rely on evidence that was not before the ALJ,

21

the district court may remand to the Commissioner but only if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." <u>Matthews</u> at 593.  Dr. Gilmour's records are dated between the years 1992 and 1999, which means that most of them existed prior to Plaintiff's application. Plaintiff claims that there was good cause for failing to submit Dr. Gilmour's notes before the ALJ made his decision because Plaintiff's counsel advised the ALJ at an August 23, 2001 hearing that he was attempting to secure those records.  The rescheduled hearing took place seventeen months later on January 23, 2003, at which Plaintiff supplied additional records.  Plaintiff did not, however, provide Dr. Gilmour's treatment records or mention any continuing problems securing the records.  In fact, at the close of the hearing, the ALJ asked Plaintiff whether he should hold the record open for additional submissions and Plaintiff replied "no." (R. at 613.)  Accordingly, Plaintiff has not demonstrated good cause for why Dr. Gilmour's records were not submitted to the ALJ and remand is not appropriate.[9]  <u>See</u> <u>Torres v. Harris</u>,

---

[9]In addition, Dr. Gilmour's records do not satisfy the materiality required for remand.  The materiality requirement has been described as evidence that has a reasonable possibility of influencing the Commissioner to decide plaintiff's claim differently.  <u>Szuback v. Secretary of Health and Human Servs.</u>, 745 F.2d 831, 833 (3d Cir. 1984).  Dr. Gilmour's records document the fact that Plaintiff had asthma and was periodically prescribed refills for her inhaler.  There is no indication of any limitations imposed by Dr. Gilmour.  This evidence seems to do no more than corroborate comments by Dr. Mitchell that were already before the ALJ; that Plaintiff had a pre-existing "mild

502 F.Supp. 518, 526-27 (E.D.Pa. 1980) (Refusing to remand where claimant had not explained why evidence was not presented at the administrative hearing); see also Brown v. Schweiker, 537 F.Supp. 190 (M.D.Fa. 1983) cited in Szuback, 749 F.2d at 833.

Plaintiff contends that even without Dr. Gilmour's treatment records, the other evidence before the ALJ would indicate a severe impairment. Plaintiff points to her use of asthma medications, including a rescue inhaler that she uses more frequently than prescribed. Plaintiff testified that she experiences shortness of breath, cough, chest pains and headaches, which she associates with her asthma. However, the medical records before the ALJ only refer to the asthma in January and February of 1996 as "mild asthma" or "seasonal asthma", for which Plaintiff was never hospitalized. (R. at 318, 407.) During the period of Plaintiff's chemotherapy, there is no reference to any respiratory problems aside from the four day hospitalization in August 1996, which Dr. Mitchell reported as completely cleared shortly thereafter. Dr. Mitchell's treatment records routinely note that Plaintiff had not experienced shortness of breath throughout 1998, 1999, and into 2000. See (R. at 247, 255-56, 261, 266, 269, 282-83.) In light of this evidence, the ALJ's decision that there was "no record of

---

asthma" condition that imposed no documented functional limitations.

treatment and no indications of functional limitations," imposed by Plaintiff's asthma is supported by substantial evidence.

> ### d.  Whether the ALJ improperly relied on the state medical consultant's RFC when the ALJ determined Plaintiff's capacity to engage in substantial gainful employment

Plaintiff argues that the RFC assessment of the non-examining state agency physician dated October 28, 1996 was an inadequate basis for the ALJ to make his own RFC for Plaintiff. Plaintiff notes that a New Jersey district court has stated "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best and when they are not accompanied by 'thorough written reports, their reliability is suspect.'" Claussen v. Chater, 950 F. Supp. 1287, 1296 n.10 (D.N.J 1996) (citing Mason v. Shalala, 994 F.2d 1058, 1165 (3d Cir. 1993)).  In addition, the opinion of a non-examining, non-treating physician is not substantial evidence when it is contradicted by all other evidence in the record.  Mathis by Mathis v. Shalala, 890 F. Supp. 461, 463 (E.D.N.C 1995). Plaintiff also argues that lending substantial weight to the state physician's assessment was inappropriate because the assessment was made five years before the hearing, and was not based on any of the medical evidence that developed during the intervening period.

Although the non-examining state physician's RFC assessment was a check box form that contained no extensive explanation for

the state physicians's conclusions, this alone does not render
the assessment immaterial.  The ALJ noted that he gave
substantial weight to the state physician's RFC assessment and
then proceeded to summarize the evidence in the rest of the
record that corroborated that assessment.  The ALJ first noted
that none of the medical records had indicated any significant
mental/cognitive limitations and that Plaintiff had received
chemotherapy through October 1996, the month of the RFC
assessment.  (R. at 29.)  The ALJ also noted that none of
Plaintiff's treating physician's had ever assessed Plaintiff with
an inability to work.  (<u>Id.</u>)  Indeed, Plaintiff's testimony
during the hearing seems to bear out the fact that Dr. Mitchell
never imposed any substantial limitations on Plaintiff when she
returned to work.  Plaintiff testified in part:

> Dr. Mitchell and I always had a real good relationship
> with my husband also, we all had an open relationship,
> and I spoke to her about going back to work and,
> although she didn't put any poundage restrictions on
> me, she just told me to be careful and be, you know,
> watch my limits, just don't push myself any further
> than I, you know, don't push myself more or less, you
> know, do what you can, and not try and do more than
> what I could and --

(R. at 600.)  Consequently, although the state physician's RFC
assessment lacked extensive explanation, the ALJ indicated that
there was additional evidence in the record that corroborated the
assessment.

25

Plaintiff further argues that the state physician's assessment had little probative value because it was produced five years before the hearing, without the benefit of the subsequent medical records.  The state physicians's RFC assessment was produced in light of records of Plaintiff's cancer surgery and subsequent treatment throughout 1996, as these were the only records of any impairment at that time.  The state physician's RFC assessment was produced at the end of Plaintiff's chemotherapy treatment in October 1996, which would certainly be relevant to her impairments as a result of that treatment.  This is relevant since Plaintiff needed to establish disability prior to her DLI, which the ALJ set as September 30, 1998.

Plaintiff also contends that the ALJ should have obtained a consultative examiner's report.  A consultative examination is generally only required when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on a claim.  20 C.F.R. 404.1519a(b).  Here, the record contained a October 25, 1996 RFC assessment from the state agency physician which indicated that Plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally, sit for six hours and stand and/or walk for a total of six hours in an eight-hour day.[10]  Dr. Mitchell's October 28, 1996 report indicating that

---

[10]Plaintiff testified that during her former work as a hemodialysis technician she would visit patients in their homes, without the need to take any machinery.  (R. at 592.)  During the

Plaintiff had no limitations corroborates that assessment.  Given
that Plaintiff needed to establish a disability prior to
September 30, 1998, it was reasonable for the ALJ to conclude
that a medical assessment during 2003 was unnecessary because the
medical evidence during the relevant period indicated that
Plaintiff already had the capacity to return to her past
occupation.  Consequently, the ALJ properly relied on the state
physician's RFC assessment without obtaining a consultative
medical report.

### 2.    Whether the ALJ improperly failed to consider a closed period of disability

Plaintiff argues in the alternative that she should be
awarded a closed period of disability for the duration of her
breast cancer treatment and recovery from January, 1996 to
September, 1997.  In order to qualify for a closed period of
disability, a claimant must be 1) insured for disability, 2)
apply for benefits and 3) have a disability at the time of
application or have had a disability which ended within the
twelve-month period before the month in which she applied in
order to be entitled to disability insurance benefits.  20 C.F.R.

_____

dialysis process, Plaintiff was able to sit down and only had to
get up every fifteen minutes to check blood pressure and
temperature.  (Id.)  The heaviest object she needed to routinely
carry was a 25-30 lb. bottle of solution needed for the
equipment.  (Id.)  Plaintiff also testified that her work as a
home health technician required her to take blood pressure
measurements and observe patients while engaging in personal care
(cleaning, preparing meals).  (R. at 593.)

§ 404.315(a); 20 C.F.R. § 404.320(b).  Thus, even if Plaintiff
was disabled during the closed period of January, 1996 to
September, 1997, she is not entitled to disability benefits for
that closed period unless she applied within twelve months after
her disability ceased.  20 C.F.R. §§ 404.315, 404,320.

Assuming, *arguendo*, that Plaintiff was "disabled" under the
Act and was fully insured during the closed period of disability,
she is still not entitled to a period of disability because her
application was filed in March, 1999.  In order to be entitled to
benefits for the closed period ending in September, 1997,
Plaintiff would have needed to file her application on or before
October, 1998.  Consequently, this court must reject Plaintiff's
argument that she is entitled to a closed period of disability.
See Thomas v. Chater, 945 F. Supp. 104, 106 (U.S.V.I. 1996)
(affirming the Commissioner's denial of disability benefits
because plaintiff did not file his application within the twelve
months after his disability ended).

In addition, the fact Plaintiff filed a prior application
for benefits on July 26, 1996 does not salvage her claim.  That
application was denied initially and also upon reconsideration.
Plaintiff did not request a hearing before an ALJ to continue the
administrative review of her 1996 application.  Although the ALJ
acknowledged at the June 26, 2003 hearing that Plaintiff had
filed a prior claim, he specifically declined to reopen that

application.  (R. at 23).  An ALJ's decision denying a request to

reopen a determination or decision is not an "initial

determination" subject to judicial review.[11]  20 C.F.R. §

404.903(l); Califano v. Sanders, 430 U.S. 99, 107-08 (1977)

(holding that section 205(g) of the Social Security Act does not

authorize review of SSA's refusal to reopen claims for benefits);

Rogerson v. Sec'y of Health and Human Servs., 872 F.2d 24, 28 (3d

Cir. 1989) (stating that "a district court does not have

statutory jurisdiction under section 405(g) to review the

Secretary's refusal to reopen a claim for benefits when made by

the Secretary without a hearing,").  Thus, this Court has no

---

[11]Section 205(g) of the Social Security Act, 42 USC 405 (g)
authorizes judicial review of a "final decision of the
Commissioner of Social Security made after a hearing."  The
regulations provide that a claimant must complete a four-step
administrative review process to obtain a judicially reviewable
final decision, which finishes after a decision by the Appeals
Council. 20 C.F.R. 404.900(a).  If the claimant does not exhaust
her administrative appeal rights and the Commissioner does not
waive that requirement, the administrative determination or
decision becomes binding. 20 C.F.R. §§ 404.905, 404.921, 404.955,
404.981.  A notable exception is when the claimant challenges the
Commissioner's denial on constitutional grounds. See Califano at
109; Weinberger v. Salfi, 422 U.S. 749, 761 (1975).  Here,
Plaintiff has made no such constitutional challenge.

Consequently, because Congress has authorized judicial
review only of a "final decision," as defined by the
Commissioner, and Plaintiff did not exhaust the administrative
appeals remedies for her 1996 application in order to obtain such
a "final decision", this Court does not have jurisdiction to
review the Commissioner's determination on Plaintiff's 1996
application. See Heckler v. Ringer, 466 U.S. 602, 618-19 (1984)
(dismissal appropriate because of failure to exhaust); Fitzgerald
v. Apfel, 148 F.3d 232, 234-35 (3d Cir. 1998).

jurisdiction to review the ALJ's decision not to reopen Plaintiff's July, 1996 claim.  Since the only claim before this Court is based upon Plaintiff's March 1999 application, which is beyond the 12 month filing period, Plaintiff cannot be awarded a closed period of disability for the period of January, 1996 to September, 1997.

**III. CONCLUSION**

For the reasons expressed above, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


                                    s/Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

Date: June 29, 2007